## CONCLUSION

From our de novo review of the record, we conclude that the revocation and cease-and-desist order imposed by the PSC was excessive. We do not make light of Telrite's failure to use the correct form a mere 6 weeks after the PSC ordered it to do so. Nor do we express an opinion whether lesser sanctions are justified. But, considering the low participation rate of Nebraska households in the Lifeline program and the purposes of both the Telecommunications Act and the NTUSFA, revocation and a cease-and-desist order were not warranted by Telrite's failure to use the correct form during a 1-day event. Accordingly, we reverse, and remand to the PSC for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

HEAVICAN, C.J., participating on briefs.

———————————

STATE OF NEBRASKA, APPELLEE, V.
LUCIO A. RODRIGUEZ III, APPELLANT.
___ N.W.2d ___

Filed August 29, 2014.    No. S-13-062.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

3. **Constitutional Law: Investigative Stops: Search and Seizure: Probable Cause.** The Fourth Amendment guarantee of the right to be free of unreasonable searches and seizures requires that an arrest be based upon probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity.

4. **Police Officers and Sheriffs: Investigative Stops: Probable Cause.** In determining whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account.

5. **Double Jeopardy: Evidence: New Trial: Appeal and Error.** The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict.

Petition for further review from the Court of Appeals, Inbody, Chief Judge, and Moore and Riedmann, Judges, on appeal thereto from the District Court for Scotts Bluff County, Leo Dobrovolny, Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

Bell Island, of Island & Huff, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## I. NATURE OF CASE

Lucio A. Rodriguez III appealed his conviction in the district court for Scotts Bluff County for driving under the influence (DUI) with a concentration of more than .15 of 1 gram of alcohol per 210 liters of breath, third offense, to the Nebraska Court of Appeals. He claimed that the district court erred when it (1) overruled his motion to suppress evidence obtained from a traffic stop that he asserted was based on an anonymous tip without corroboration and (2) overruled his motion for a mistrial based on the State's failure to dismiss another pending charge which the State knew prior to trial it could not prove. The Court of Appeals affirmed Rodriguez' conviction and sentence. We granted his petition for further review. We reverse the decision of the Court of Appeals and remand the cause to the Court of Appeals with directions to reverse Rodriguez' DUI conviction and remand the cause to the district court for a new trial.

## II. STATEMENT OF FACTS

In its memorandum opinion, the Court of Appeals described the facts of this case for which we find support in the record as follows:

On April 28, 2012, the Scotts Bluff County 911 emergency dispatch center received notification of a possible disturbance near a rental car business. When the dispatch center communicated this information to Officer Aaron Kleensang, the dispatcher noted that the caller stated that he had been pushed out of a moving vehicle. The dispatcher also stated that the caller identified the vehicle as a green GMC Envoy and stated that this vehicle left the area heading westbound on Highway 26.

At the time Kleensang received the dispatch, he was near the vicinity of the reported activity. [He did not see the caller at the rental car business, however, he soon] observed a vehicle matching the description he received from the dispatch center traveling westbound on Highway 26. Kleensang made two turns, followed the vehicle onto 17th Avenue and 20th Street, and observed it stop on its own. The vehicle moved to the side of the road and parked before Kleensang activated his patrol car's emergency lights. Kleensang testified that he activated the lights to signal the driver that Kleensang wanted to talk with him.

Kleensang approached the driver and began to question him about the reported disturbance. Rodriguez was identified as the driver. Kleensang had other officers in the area make contact with the caller, and the caller was eventually brought to a nearby location. No other evidence was adduced about the caller, and there was apparently no further action taken in regard to the disturbance. While discussing the reported disturbance with Rodriguez, Kleensang made several initial observations. He detected a strong odor of alcohol and noticed that Rodriguez had a flushed face, slurred speech, and bloodshot, watery eyes. After administering three field sobriety tests, Kleensang believed Rodriguez was heavily intoxicated. Kleensang arrested Rodriguez following a preliminary breath test and transported him to the detention center in Scotts[b]luff, Nebraska. Rodriguez then submitted to a "DataMaster" test at the detention center, and his breath tested at .226 grams of alcohol per 210 liters of breath.

During the booking process, Rodriguez' wallet was taken from him and inventoried. Kleensang testified this is standard procedure whenever he takes someone to jail. When the wallet was opened, two clear plastic baggies containing apparent controlled substances were discovered at the bottom. Preliminary tests were conducted on these substances at the jail. Subsequent tests at the Nebraska State Patrol crime laboratory revealed that one substance was cocaine and that the other substance was not a controlled substance.

On May 10, 2012, the State filed an information charging Rodriguez with DUI with a blood alcohol level greater than .15, third offense; possession of methamphetamine; and possession of cocaine. Rodriguez moved to suppress any evidence gathered from the stop and subsequent search, contending that the stop was not based on reasonable and articulable suspicion that a crime had been committed or was about to be committed.

The district court overruled the motion to suppress. In its order, the court noted that the stop was justified under two separate analyses. First, the court concluded that the stop could be considered to be a "'first-tier' contact" for which no Fourth Amendment protections apply. The court found Kleensang had not used emergency lights or a siren to cause Rodriguez to stop. Thus, the court determined that a reasonable person would not have believed he was required to stop or that his movement was impeded in any way before Kleensang activated his patrol car's emergency lights. Second, analyzing the stop as a "'tier-two'" encounter, the court determined reasonable suspicion existed for the stop because Kleensang had corroborated the information from the dispatch center.

On December 18, 2012, the case proceeded to a jury trial. Despite having received laboratory reports demonstrating that Rodriguez did not possess methamphetamine on the night he was arrested, the State did not dismiss the charge in advance of trial. Rodriguez' motions for mistrial based on this failure to dismiss were denied, but the court

entered a directed verdict in his favor on the possession of methamphetamine charge at the close of the State's evidence. The jury convicted Rodriguez of DUI, but acquitted him of the possession of cocaine charge. The court sentenced Rodriguez to 60 days in jail and a term of probation, suspended his license for 5 years, and ordered him to pay court costs.

*State v. Rodriguez*, No. A-13-062, 2013 WL 6246792, *1-2 (Neb. App. Dec. 3, 2013) (selected for posting to court Web site).

Rodriguez appealed his DUI conviction to the Court of Appeals. He claimed that the district court erred when it (1) analyzed the traffic stop as a first-tier police contact; (2) overruled his motion to suppress, despite a lack of corroboration of the anonymous tip; and (3) overruled his motion for a mistrial based on the State's failure to dismiss the methamphetamine charge.

The Court of Appeals affirmed Rodriguez' conviction and sentence. With regard to the assignment of error related to a first-tier police contact, the Court of Appeals noted that the State did little to challenge Rodriguez' argument that he was seized when Kleensang activated his patrol car's lights and that the contact was therefore a second-tier traffic stop requiring reasonable suspicion. The Court of Appeals determined that the State had conceded that the contact was a traffic stop and concluded that because the district court had alternatively concluded that there was reasonable suspicion to support a traffic stop, it was unnecessary for the Court of Appeals to address the first assignment of error related to a first-tier stop.

With regard to whether there was reasonable suspicion for a traffic stop, the Court of Appeals cited Nebraska precedent and concluded that the content of the dispatch and Kleensang's observations consistent with the dispatch gave Kleensang a reasonable suspicion to justify the traffic stop.

With regard to Rodriguez' motion for a mistrial, the Court of Appeals disapproved of the county attorney's failure to dismiss the methamphetamine charge prior to trial and stated that such conduct was "improper in the course of conducting a fair trial because it may tend to expose a jury to irrelevant and

prejudicial matters." *State v. Rodriguez*, 2013 WL 6246792 at *5. Although it disapproved of the prosecution's conduct, the Court of Appeals determined that such conduct did not reach a level requiring the declaration of a mistrial. The Court of Appeals concluded that the district court did not abuse its discretion when it overruled Rodriguez' motion for a mistrial. The Court of Appeals affirmed. *Id*.

We granted Rodriguez' petition for further review.

## III. ASSIGNMENTS OF ERROR

On further review, Rodriguez claims, restated, that the Court of Appeals erred when it (1) determined that the district court did not err when it overruled Rodriguez' motion to suppress and (2) determined that the district court did not err when it overruled his motion for a mistrial based on the State's pursuit of the methamphetamine charge after it knew it could not prove the charge.

## IV. STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Schuller*, 287 Neb. 500, 843 N.W.2d 626 (2014).

## V. ANALYSIS

### 1. Court of Appeals Erred When It Affirmed Overruling of Rodriguez' Motion to Suppress

Rodriguez first claims that the Court of Appeals erred when it determined that the traffic stop was justified and that the motion to suppress was properly overruled. We conclude on the record of admitted evidence before us that the anonymous tip in this case did not justify the stop. Therefore, the district court erred when it overruled Rodriguez' motion to suppress and the Court of Appeals erred when it affirmed this ruling.

[2-4] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Dalland*, 287 Neb. 231, 842 N.W.2d 92 (2014). The Fourth Amendment guarantee of the right to be free of unreasonable searches and seizures requires that an arrest be based upon probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity. *State v. Wollam*, 280 Neb. 43, 783 N.W.2d 612 (2010). In determining whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account. See *id*.

In the present case, the Court of Appeals first addressed Rodriguez' claim that the district court erred when it determined that the contact between Kleensang and Rodriguez was a "first-tier" contact that did not trigger Fourth Amendment protections. Because the State conceded on appeal that the contact was a "second-tier" traffic stop, the Court of Appeals reviewed the district court's alternative determination that there was reasonable suspicion to support a traffic stop. Because neither party complains of this determination on further review, we accept that the contact was a traffic stop. Thus, we review the lower courts' determinations that the content of the dispatch plus Kleensang's observation of Rodriguez' vehicle in the location indicated in the dispatch provided reasonable suspicion to justify the traffic stop.

Because the stop was based on information supplied by a caller, the reliability of such information is key to determining whether there was reasonable suspicion. As discussed below, Fourth Amendment case law indicates that an important factor in assessing the reliability of such information is the distinction between whether the person supplying the information is known to law enforcement or the information comes from an anonymous source.

Both the district court and the Court of Appeals treated the call in this case as an anonymous tip. Upon our review of the record, we note that there was no evidence received in the district court that indicates the name of the caller was known

to law enforcement at the time Kleensang initiated the traffic stop. The State acknowledges in its appellate briefs that no evidence was received by the district court establishing the identity of the caller prior to the stop, and the State suggests that the call be treated as an anonymous tip for purposes of Fourth Amendment analysis. We agree.

Although the district court and the Court of Appeals both treated the caller as anonymous, neither court relied on certain relevant precedent from the U.S. Supreme Court regarding anonymous tips in the context of Fourth Amendment analysis. Both relied on this court's opinion in *State v. Bowley*, 232 Neb. 771, 442 N.W.2d 215 (1989). In *Bowley*, we noted that the factual basis for a traffic stop need not arise from the officer's personal observation, but may be supplied by information acquired from another person. We further noted that when the factual basis is supplied by another, the information must contain sufficient indicia of reliability, and we stated that a citizen informant who has personally observed the commission of a crime is presumptively reliable. We concluded that the investigatory stop in *Bowley* was reasonable, and in making this determination, we noted that "[w]hile the informants were unidentified until after [the defendant] was stopped, they did remain and identify themselves to police." 232 Neb. at 773, 442 N.W.2d at 217.

Based on its reading of *Bowley*, the Court of Appeals rejected Rodriguez' argument to the effect that, in the absence of identification of the caller, there was not sufficient indicia of the caller's reliability to support the stop. The Court of Appeals recited that the caller reported having been pushed from a moving vehicle, and it therefore reasoned that the caller should be treated as a citizen informant whose personal observation of the commission of a crime was presumptively reliable under *Bowley*. The Court of Appeals appeared to determine that the caller's reliability was enhanced through corroboration when "Kleensang personally observed a vehicle which matched the description in the dispatch and was heading in the direction indicated by the caller to dispatch." *State v. Rodriguez*, No. A-13-062,

2013 WL 6246792, *4 (Neb. App. Dec. 3, 2013) (selected for posting to court Web site).

Since our decision in *Bowley* in 1989, the U.S. Supreme Court has decided key Fourth Amendment cases involving anonymous tips but we have not had occasion to discuss these cases. We therefore review the development of relevant Fourth Amendment law regarding anonymous tips since we decided *Bowley* before applying such law to this case.

(a) U.S. Supreme Court Precedent
Regarding Anonymous Tips in
Fourth Amendment Cases

Although the caller in the instant case did not supply predictive behavior of the defendant, the district court cited the case of *Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990), as support of its conclusion that "the anonymous tip was sufficiently corroborated to furnish reasonable suspicion." In *White*, the U.S. Supreme Court determined that an anonymous tip from a telephone caller provided justification for a traffic stop when certain details provided by the caller were corroborated by police observation. The caller stated that the defendant would leave a particular location at a particular time in a particular vehicle, that she would go to another particular location, and that she would be in possession of cocaine. Officers' personal observations corroborated that the defendant left the general location during the general time-frame indicated by the caller, that she got into the particular vehicle identified by the caller, and that she proceeded on the most direct route toward the location indicated by the caller. The officers stopped the defendant's vehicle prior to reaching that location.

In considering whether the stop in *White* was justified, the U.S. Supreme Court noted that the caller's ability to predict the defendant's future behavior demonstrated inside information and a special familiarity with her affairs which, the Court determined, gave the police reason to believe that the caller was also likely to have access to information about her illegal activity. The Court described the decision in *White* as "a close case" but concluded that "under the totality of the

circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop." 496 U.S. at 332.

Neither the district court nor the Court of Appeals in this case cited *Florida v. J. L.*, 529 U.S. 266, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000), in which the Court held that an anonymous tip lacked sufficient indicia of reliability to establish reasonable suspicion for an investigatory stop. The anonymous caller in *J. L.* reported that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." 529 U.S. at 268. Officers were instructed to respond to the tip, and when they arrived at the indicated location, they saw three black males, one of whom was wearing a plaid shirt. They made no other observation that would indicate illegal activity; nevertheless, one of the officers approached the man, told him to put his hands up on the bus stop, frisked him, and seized a gun from his pocket.

The Court in *J. L.* compared the facts of the case to those in *White* and determined that "[t]he tip in [*J. L.*] lacked the moderate indicia of reliability present in *White* and essential to the Court's decision in that case." 529 U.S. at 271. The Court noted that the call in *J. L.* "provided no predictive information" as was present in *White*. 529 U.S. at 271. The Court in *J. L.* rejected Florida's argument that the tip was reliable because the defendant met the anonymous informant's description of a particular person at a particular location; the Court stated that "[s]uch a tip . . . does not show that the tipster has knowledge of concealed criminal activity" and that "reasonable suspicion . . . requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." 529 U.S. at 272. The Court in *J. L.* described its decision in *White* as "borderline" and stated that "[i]f *White* was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line." 529 U.S. at 271.

After the Court of Appeals' decision in this case, and after oral argument on further review to this court, the U.S. Supreme Court filed another opinion involving the Fourth Amendment and anonymous tips, *Navarette v. California*, ___ U.S. ___, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014). At this court's

direction, the parties filed supplemental briefs. In *Navarette*, the U.S. Supreme Court concluded that under the totality of the circumstances in that case, an anonymous tip regarding reckless driving gave police reasonable suspicion that justified a traffic stop. In *Navarette*, an unidentified 911 emergency dispatch caller reported that another vehicle had run her vehicle off the road. The caller gave her location and a description of the other vehicle, including the license plate number. A police officer in the reported area saw a vehicle meeting the description and, without personally observing reckless driving or other violation of law, pulled the defendant's vehicle over. A second officer, who had separately responded to the report, also arrived on the scene. As a result of the stop, the officers found 30 pounds of marijuana in the vehicle, which evidence the defendant sought to suppress on the basis that it had been obtained as the result of a traffic stop that was not supported by reasonable suspicion.

Referring to its decisions in *Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990), and *Florida v. J. L., supra*, the U.S. Supreme Court stated that the initial question in its Fourth Amendment analysis was whether the anonymous tip was reliable. Under the facts in *Navarette*, the immediate focus was whether the call was sufficiently reliable to credit the allegation that the defendant's vehicle had run the caller off the road. The majority in *Navarette* determined that due to certain factors, the call did bear adequate indicia of reliability. The factors on which the majority in *Navarette* relied were: (1) eyewitness knowledge, i.e., the caller necessarily claimed to have personally observed the alleged dangerous driving; (2) contemporaneous reporting, i.e., the caller reported the incident soon after it occurred; and (3) the caller's use of the 911 emergency dispatch system, which system allows for identifying and tracing callers, thus providing some safeguard against false reports.

After determining that the anonymous tip was a reliable report of having been run off the road, the majority in *Navarette* stated that "[e]ven a reliable tip will justify an investigative stop only if it creates reasonable suspicion that 'criminal activity may be afoot.'" 134 S. Ct. at 1690. The

majority therefore found it necessary to determine whether the anonymous caller's tip created a "reasonable suspicion of an ongoing crime such as drunk driving as opposed to an isolated episode of past recklessness." *Id*. The majority concluded that the reported behavior of the defendant driver, viewed from an objective standpoint, amounted to a reasonable suspicion of drunk driving. The majority in *Navarette* stated that rather than a conclusory allegation of drunk or reckless driving, the caller alleged a specific and dangerous result of the driver's conduct which resembled "paradigmatic manifestations of drunk driving." 134 S. Ct. at 1691. In concluding that there was reasonable suspicion to justify the traffic stop in *Navarette*, the majority acknowledged that, like the decision in *White*, the decision was a "'close case.'" 134 S. Ct. at 1692.

Justice Scalia, joined by three other justices, dissented in *Navarette*. The dissent found fault with the factors relied on by the majority as indicia of reliability. With regard to the caller's report that the defendant's vehicle had run her vehicle off the road, the dissent stated that "the police had no reason to credit that charge and many reasons to doubt it, beginning with the peculiar fact that the accusation was anonymous." *Navarette v. California*, ___ U.S. ___, 134 S. Ct. 1683, 1692, 188 L. Ed. 2d 680 (2014) (Scalia, J., dissenting; Ginsburg, Sotomayor, and Kagan, JJ., join).

The dissent in *Navarette* did agree with the majority that the traffic stop "required suspicion of an ongoing crime, not merely suspicion of having run someone off the road earlier." 134 S. Ct. at 1695. However, the dissent maintained that the caller's report, at best, indicated careless or reckless driving rather than drunk driving and that "driving while being a careless or reckless person, unlike driving while being a drunk person, is not an ongoing crime." *Id*.

### (b) Application of U.S. Supreme Court
### Precedent to This Case

We apply the above-discussed U.S. Supreme Court precedent to the facts of this case. We note first that the district court relied on *White* to conclude that the anonymous tip in

this case was sufficiently corroborated to supply reasonable suspicion for the traffic stop. This reliance was misplaced. The information supplied by the caller in this case is more similar to the corroborated information that the Court concluded in *Florida v. J. L.*, 529 U.S. 266, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000), did not supply reasonable suspicion. The information provided by the caller and corroborated by Kleensang in this case was merely a description of the vehicle and its general location. There was no prediction of future behavior as was present in *Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). Under *J. L.*, corroboration of a description of the defendant and the defendant's general location did not supply reasonable suspicion; instead, the Court stated that the caller's information regarding illegal activity needed to be reliable.

In *Navarette* and *White*, the investigatory stops were approved, but both were seen as "close cases" by the U.S. Supreme Court. Because there are important differences in the totality of the circumstances between the present case and relevant precedent, we reach a different outcome. In particular, although the indicia of reliability in this case bear a similarity to those noted in *Navarette*, we believe there are two important factors explored below that lead to a different result: (1) Kleensang had reason to doubt the reliability of the anonymous caller's report of illegal activity and (2) the anonymous caller in this case did not report an ongoing crime.

### (i) Reliability of Caller

The majority in *Navarette* noted the following as indicia of reliability: (1) eyewitness knowledge, (2) contemporaneous reporting, and (3) the caller's use of the 911 emergency dispatch system. In the present case, the caller claimed eyewitness knowledge of the event and made the call soon after it occurred. The record also indicates that the call was made to law enforcement through 911 or a similar emergency dispatch system.

Unlike the facts of *Navarette*, the officer in the present case made observations that raised doubts regarding the reliability of the caller's report. Kleensang testified at the suppression

hearing that before he saw Rodriguez' vehicle, he drove past the location where the person reported having been pushed out of the vehicle. Upon inspection, Kleensang did not see anyone at that location. The fact that Kleensang did not see anyone at the location claimed by the caller was a contraindication of reliability and weakened the value of the anonymous tip in establishing reasonable suspicion to stop Rodriguez' vehicle. The anonymous tip in this case bore weaker indicia of reliability than the tip in *Navarette*.

### (ii) Ongoing Crime

As we have explained above, the fact that the reported crime was seen as ongoing was critical to the outcome in *Navarette v. California*, ___ U.S. ___, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014). Even though the majority and the dissent disagreed on whether the report of driving another vehicle off the road indicated ongoing drunk driving, the majority and the dissent agreed that the officer needed reasonable suspicion of an ongoing crime to justify an investigatory stop. In this regard, it has been stated that "an anonymous 911 call reporting an ongoing emergency is entitled to a higher degree of reliability and requires a lesser showing of corroboration than a tip that alleges general criminality." *U.S. v. Simmons*, 560 F.3d 98, 105 (2d Cir. 2009).

In the present case, the caller indicated only that he had been pushed from the described vehicle. There was nothing in the content of the call that indicated that the driver was driving drunk or that the driver posed a threat of public harm by driving recklessly. The caller did not report an ongoing crime and instead indicated an isolated past episode. The majority in *Navarette* found that the anonymous caller reported an ongoing crime, which finding was key to its decision. Such factor is not present in this case.

### (iii) Resolution

Keeping in mind that the decision in *Navarette* that the stop was justified was, in the words of the Court, a "close case," we determine that the important differences present in the instant case as compared to *Navarette* are sufficient to tip the

reasonable suspicion analysis in the other direction. The fact that Kleensang saw no one at the location where the caller reported having been thrown from a vehicle created doubt as to the anonymous caller's reliability. Furthermore, the caller did not report an ongoing crime, which under *Navarette* and other case law is necessary to support the finding of reasonable suspicion justifying a traffic stop.

We conclude that on the record presented to the district court in this case, the court erred when it determined that there was reasonable suspicion to justify the traffic stop and overruled Rodriguez' motion to suppress. Therefore, the Court of Appeals committed reversible error when it affirmed the overruling of the motion to suppress and affirmed Rodriguez' conviction of DUI.

## (iv) Double Jeopardy Analysis

[5] Having concluded that the denial of the motion to suppress was reversible error, we must determine whether the totality of the evidence admitted by the district court was sufficient to sustain Rodriguez' conviction for DUI. If it was not, then double jeopardy forbids a remand for a new trial. *State v. Ash*, 286 Neb. 681, 838 N.W.2d 273 (2013). But the Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict. *Id*.

After reviewing the record, we conclude that the evidence presented at trial, including the evidence that should have been suppressed, was sufficient to support the DUI conviction. As such, we conclude that double jeopardy does not preclude a remand for a new trial of the DUI charge. We note that there will not be a new trial on either the possession of methamphetamine charge or the possession of cocaine charge, because the methamphetamine charge was dismissed and the jury acquitted Rodriguez of the cocaine charge.

We conclude that the Court of Appeals' decision must be reversed and the cause remanded to the Court of Appeals with directions to reverse the DUI conviction and remand the cause to the district court for a new trial.

### 2. Court of Appeals Properly Disapproved of State's Failure to Dismiss Methamphetamine Charge Prior to Trial But We Need Not Determine Whether State's Misconduct Warranted Mistrial

For his second assignment of error, Rodriguez claims the district court erred when it overruled his motions for mistrial based on the State's having failed to dismiss the methamphetamine charge prior to trial knowing it lacked evidence and nevertheless proceeded to comment on the charge to the jury. We agree with the Court of Appeals' disapproval of the State's conduct. However, because we have concluded above that Rodriguez' DUI conviction should be reversed based on the suppression issue, we need not decide whether the State's misconduct warranted declaration of a mistrial.

During voir dire, it was made clear to the jury that three counts were involved in the case and that one count of possession of methamphetamine would be at issue. One juror volunteered that he had "a family member that's on meth and it's destroyed his life totally." After further inquiry by the district court, the juror was excused.

Notwithstanding the methamphetamine-related colloquy during the voir dire of the jury, in his opening statement, the prosecutor admitted that the State would not be able to prove the charge of possession of methamphetamine. Rodriguez moved for a mistrial at the end of the State's opening statement. In a conference outside the jury's presence, the county attorney stated that months prior to trial, he had received the report showing that neither substance was methamphetamine. He indicated that he had shared the report with defense counsel. The county attorney stated that his failure to dismiss the charge was "an oversight," but he did not adequately explain why he nevertheless commented on the methamphetamine charge to the jury.

The district court overruled Rodriguez' motion for a mistrial. The charge remained in the case during the receipt of the State's evidence. Thereafter, the court granted Rodriguez' "motion for a directed verdict" on the charge of possession of methamphetamine at the close of the State's evidence and

dismissed the count. We agree with the Court of Appeals that the State's inaction prior to trial and its action during the preliminary stages of the trial were improper because they exposed the jury to irrelevant and prejudicial matters. The State should have dismissed the charge promptly after it knew it could not prove the charge, and the State had ample opportunity prior to and on the eve of trial to do so.

In the Court of Appeals' opinion, it concluded that the district court did not abuse its discretion when it overruled Rodriguez' motions for a mistrial based on the State's improper conduct. Because we have determined that Rodriguez' DUI conviction should be reversed on other grounds and because there is no reason for the State to engage in the same conduct on remand, it is not necessary to our disposition of this appeal to decide whether the district court abused its discretion and should have declared a mistrial at the first opportunity on the basis of the State's conduct in this trial. Notwithstanding our disapproval of the State's conduct on this issue, we are not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before us. See *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013).

## VI. CONCLUSION

We conclude that the district court erred when it overruled Rodriguez' motion to suppress evidence obtained as a result of the traffic stop and that the Court of Appeals erred when it affirmed this ruling and Rodriguez' DUI conviction. We reverse the decision of the Court of Appeals and remand the cause to the Court of Appeals with directions to reverse the DUI conviction and remand the cause to the district court for a new trial. With regard to the State's failure to dismiss the possession of methamphetamine count prior to the trial, we share the Court of Appeals' disapproval of the State's conduct. We conclude, however, that it is not necessary for us to decide the correctness of the lower courts' decisions to the effect that a mistrial was not warranted for the misconduct, because it will not be repeated upon remand for a new trial.

Reversed and remanded with directions.

Heavican, C.J., dissenting.

I respectfully dissent from the majority's determination that the district court erred in overruling Rodriguez' motion to suppress. I would conclude that the stop of Rodriguez' vehicle was supported by reasonable suspicion.

The principles of law are well established. As the U.S. Supreme Court noted in *Navarette v. California*[1]:

> The Fourth Amendment permits brief investigative stops—such as the traffic stop in this case—when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." . . . The "reasonable suspicion" necessary to justify such a stop "is dependent upon both the content of information possessed by police and its degree of reliability." . . . The standard takes into account "the totality of the circumstances—the whole picture." . . . Although a mere "'hunch'" does not create reasonable suspicion . . . , the level of suspicion the standard requires is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause.

And these principles "apply with full force to investigative stops based on information from anonymous tips."[2] While an anonymous tip, standing alone, "'seldom demonstrates the informant's basis of knowledge or veracity,'" in the right circumstances, "an anonymous tip can demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop.'"[3]

In my view, and considered in light of *Navarette*, the anonymous tip received by law enforcement was sufficiently reliable to provide law enforcement with reasonable suspicion to stop Rodriguez.

---

[1] *Navarette v. California*, ___ U.S. ___, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014) (citations omitted).

[2] *Id.*, 134 S. Ct. at 1688.

[3] *Id.* (citations omitted).

First, the caller in this case reported that he had been pushed out of a moving vehicle. The Court in *Navaratte* noted that the caller in that case, who had reported her vehicle's being run off the road by a particular vehicle, "claimed eyewitness knowledge" of the incident and that such lends "significant support to the tip's reliability."[4]

In addition, the caller was able to describe the vehicle in which he had been riding as a dark-colored GMC Envoy, and to further report that the vehicle was heading westbound on Highway 26. Kleensang testified that he was about 1 to 1½ miles away from the location of the incident at the time of the dispatch and that he proceeded directly to Highway 26. Kleensang testified that about a quarter of a mile away from the site of the incident, he observed a green GMC Envoy westbound on Highway 26 getting ready to exit the highway. Thus, the distances and time involved suggest that the caller's report of the incident was relatively contemporaneous with the incident. The Court in *Navarette* noted that such a report "has long been treated as especially reliable."[5]

Furthermore, the caller here, like the caller in *Navarette*, used the 911 system, or a similar dispatch system. Such lends further reliability to the caller's tip, because the safeguards and identification features of the system are such that "a reasonable officer could conclude that a false tipster would think twice before using" it.[6]

I am not concerned, as the majority is, that no one was at the place of the incident when Kleensang originally drove past it. In my view, in this circumstance, the fact that a person who had just been pushed out of a moving vehicle did not stay at the scene of the incident does not affect the reliability of that person's report.

Nor am I concerned about any lack of additional suspicious conduct by Rodriguez following this anonymous report. The Court in *Navarette* noted that

---

[4] *Id.*, 134 S. Ct. at 1689.

[5] *Id.*

[6] *Id.*, 134 S. Ct. at 1690.

the absence of additional suspicious conduct [did not] dispel the reasonable suspicion of drunk driving. . . . Once reasonable suspicion of drunk driving arises, "[t]he reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques." . . . This would be a particularly inappropriate context to depart from that settled rule, because allowing a drunk driver a second chance for dangerous conduct could have disastrous consequences.[7]

In the same way, once Kleensang had a report that an individual had been pushed out of a moving vehicle, the failure to follow up on that report, especially when faced with a vehicle that matched the report's description, defies reason and "could have disastrous consequences."[8]

I do acknowledge, of course, that this case is slightly different from *Navarette*. There, the Court noted that the caller's "claim that another vehicle ran her off the road . . . necessarily implies that the informant knows the other car was driven dangerously,"[9] while in this case, whatever crime that occurred as of the time Rodriguez allegedly pushed the caller out of the vehicle was arguably over. And I would agree that the act here is perhaps less predictive of drunk driving than the reckless driving in *Navarette*.

Still, on these facts, I ultimately see no reasonable distinction between hitting another vehicle or object and pushing an individual out of a moving vehicle. In my view, using the common sense we all hope law enforcement uses, it was reasonable for Kleensang to conclude that a driver who had been accused of pushing a passenger out of a moving vehicle might pose other threats while driving.

In sum, the caller in this case used the 911 emergency dispatch system to report that he had been pushed out of a moving vehicle. He described that vehicle and indicated the direction that vehicle had been traveling. Law enforcement found a

---

[7] *Id.*, 134 S. Ct. at 1691 (citations omitted).

[8] *Id.*

[9] *Id.*, 134 S. Ct. at 1689.

vehicle matching that description in the area where the caller said the vehicle was headed. Taken together, this is sufficient to create a reasonable suspicion to support Kleensang's stop of Rodriguez' vehicle. I would affirm.

Cassel, J., joins in this dissent.

_____

Michael E. Kelliher, appellant, v.
Travis Soundy et al., appellees.
___ N.W.2d ___

Filed August 29, 2014.    No. S-13-538.

1. **Judgments: Jurisdiction.** When a jurisdictional question does not involve a factual dispute, the issue is a matter of law.
2. **Judgments: Appeal and Error.** An appellate court reviews questions of law independently of the lower court's conclusion.
3. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, an appellate court must determine whether it has jurisdiction over the matter before it.
5. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.
6. **Final Orders: Appeal and Error.** To fall within the collateral order doctrine, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.
7. ____: ____. The requirement that a court order must resolve an important issue completely separate from the merits of the action prevents piecemeal review.
8. ____: ____. Court orders which involve considerations that are enmeshed in the factual and legal issues of the cause of action are not immediately reviewable.
9. **Property: Sales: Intent.** The scope of the lis pendens statute is determined by its end and purpose. The purpose of the lis pendens statute is to prevent third persons, during the pendency of the litigation, from acquiring interests in the land which would preclude the court from granting the relief sought.
10. **Actions: Property: Notice.** Cancellation of a notice of lis pendens is completely separate from the merits of the underlying action.